# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| WI-LAN INC. and WIRELESS FUTURE TECHNOLOGIES, INC., <br><br>                 Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC. and TOYOTA MOTOR SALES, U.S.A., INC., <br><br>                 Defendants. | CIVIL ACTION NO. 2:25-cv-00066 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs, Wi-LAN Inc. and Wireless Future Technologies Inc. (collectively, "WiLAN"), file this Complaint against Defendants, Toyota Motor Corporation, Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota"), for infringements of U.S. Patent No., 8,259,688 (the "'688 Patent"), U.S. Patent No. 9,271,266 (the "'266 Patent"), U.S. Patent No. 9,490,879 (the "'879 Patent"), U.S. Patent No. 9,622,227 (the "'227 Patent"), U.S. Patent No. 10,985,956 (the "'956 Patent"), U.S. Patent No. 11,109,282 (the "'282 Patent"), and U.S. Patent No. 11,388,664 (the "'664 Patent") (collectively, the "Asserted Patents").

## THE PARTIES

1.      Plaintiff Wi-LAN Inc. is a corporation organized and existing under the laws of Canada, with its principal place of business at 1891 Robertson Road, Suite 100, Ottawa, ON, K2H 5B7, Canada.

2.      Plaintiff Wireless Future Technologies, Inc. is a Delaware corporation, with its

principal place of business at 1891 Robertson Road, Suite 100, Ottawa, ON, K2H 5B7, Canada. Wireless Future Technologies, Inc. is a wholly-owned subsidiary of Wi-LAN Technologies Inc., which is a wholly-owned subsidiary of Wi-LAN Inc.

3.     Defendant Toyota Motor Corporation ("TMC") is a corporation organized and existing under the laws of Japan with a principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan. On information and belief, TMC does business itself, and through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas.

4.     TMC conducts business in Texas and in the Eastern District of Texas, directly or through intermediaries, including subsidiaries, distributors, affiliates, retailers, suppliers, integrators, customers, and others.

5.     TMC is engaged in making, using, selling, offering for sale, and/or importing vehicles that support LTE communications ("Accused Products")[1] to and throughout the United States, including this District. TMC also induces its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, TMC and its foreign and U.S.-based subsidiaries—which act together as part of TMC's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for TMC as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order implement a distribution channel of infringing products

---

[1] The Accused Products include each Toyota- or Lexus-branded vehicle that supports LTE communications. 2024 Prius models are one example of such vehicles.

within this District and the United States.

6.     TMC maintains a substantial corporate presence in the United States via at least its U.S.-based co-Defendant subsidiaries, namely Toyota Motor North America, Inc. and Defendant Toyota Motor Sales, U.S.A., Inc.

7.     Alone and through at least the activities of its U.S.-based co-Defendant subsidiaries, TMC conducts business in the United States and this District, including importing, making, distributing, and selling Accused Products that infringe the Asserted Patents. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

8.     Through importation, manufacture, offers to sell, sales, distributions, and related agreements to transfer ownership of TMC's products with distributors and customers operating in and maintaining significant business presences in the United States, TMC does extensive business in the United States, this State, and this District.

9.     Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized and existing under the laws of California, with its principal place of business in this District at 6565 Headquarters Drive, Plano, Texas 75024. On information and belief, TMNA is a wholly-owned subsidiary of TMC. TMNA may be served with process through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, TMNA is responsible for research and development, manufacturing, sales,

offers for sale, marketing, importation, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States, including this District.

10.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is corporation organized and existing under the laws of California, with its principal place of business in this District at 6565 Headquarters Dr., Plano, Texas 75024. On information and belief, TMS is a wholly-owned subsidiary of TMC. TMS may be served through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, TMS is responsible for sales, marketing, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States, including this District.

## JURISDICTION AND VENUE

11.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has specific and general personal jurisdiction over Toyota consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Toyota (i) has engaged in continuous, systematic, and substantial business in Texas, (ii) maintains principal places of business in Texas and in this District, (iii) is registered to do business in Texas, and (iv) has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Accused Products in this State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, Toyota has purposefully and voluntarily

placed, and is continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products will be imported into the United States, this State, and this District.

13.     In addition, Toyota has derived substantial revenues from its infringing acts occurring within this State and this District. Toyota has substantial business in this State and this District, including (i) at least part of its infringing activities alleged herein, and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

14.     Further still, Toyota has knowingly induced, and continues to knowingly induce, infringements within this State and this District by advertising, marketing, offering for sale and/or selling Accused Products that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Toyota's knowledge thereof. Additionally, TMC has induced TMNA and TMS to import, offer to sell, and/or sell infringing products within this State and this District through, among other things, corporate directives and planning.

15.     Toyota has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Toyota also has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

16.     With respect to TMC, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). TMC is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

17.     With respect to TMNA and TMS, venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, (i) TMNA and TMS are subject to personal jurisdiction in this District, (ii) TMNA and TMS have committed acts of patent infringement in this District, and (iii) TMNA and TMS have regular and established places of business in this District, including at 6565 Headquarters Dr., Plano, Texas 75024.

### THE ASSERTED PATENTS AND TECHNOLOGY

18.     The '688 Patent is entitled, "Pre-Allocated Access Identifiers." It lawfully issued on September 4, 2012 and stems from U.S. Patent Application No. 11/469,794, which was filed on September 1, 2006. The '688 Patent is publicly- available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/8259688

19.     Huizhou TCL Mobile Communication Co. Ltd., TCT Mobile (US) Inc., and TCL Mobile Communication (HK) Co., Ltd. (collectively, "TCL") filed *Ex Parte* Reexamination Request No. 90/014,794 against the '688 Patent on July 2, 2021. The United States Patent and Trademark Office ("USPTO") confirmed that claims 1-3, 5-8, 10, 15, and 16 were patentable, as

amended, original claims 4, 9, and 11-14 (which depend from amended independent claims) were patentable, and new claims 17-40 were patentable. A true and correct copy of the first *Ex Parte* Reexamination Certificate for the '688 Patent, issued on January 19, 2022, is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/8259688.

20.    TCL filed Ex Parte Reexamination Request No. 90/019,259 against the '688 Patent on September 26, 2023. In *Ex Parte* Reexamination Request No. 90/019,259, the USPTO confirmed the patentability of claims 1-40 of the '688 Patent. A true and correct copy of the second *Ex Parte* Reexamination Certificate for the '688 Patent, issued on April 29, 2024, publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/8259688

21.    The '266 Patent is entitled, "Searching for Control Channels in a Wireless Network." It lawfully issued on February 23, 2016 and stems from U.S. Patent Application No. 12/451,350, which was filed on March 2, 2010. The '266 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/9271266

22.    The '879 Patent is entitled, "Uplink Control Signaling in Cellular Telecommunication System." It lawfully issued on November 8, 2016 and stems from U.S. Patent Application No. 14/246,537, which was filed on April 7, 2014. The '879 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/9490879

23.    The '227 Patent is entitled, "Reporting Channel State Information in a Multiple Component Carrier Network." It lawfully issued on April 11, 2017 and stems from U.S. Patent

Application No. 15/137,940, which was filed on April 25, 2016. The '227 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/9622227

24.    The '956 Patent is entitled, "Pre-Allocated Random Access Identifiers." It lawfully issued on April 20, 2021 and stems from U.S. Patent Application No. 16/151,252, which was filed on October 3, 2018. The '956 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/10985956

25.    The '282 Patent is entitled, "Methods, Apparatuses, Related Computer Program Product and Data Structure for Deciding on a Signaling Scheme for Handover." It lawfully issued on August 31, 2021 and stems from U.S. Patent Application No. 16/821,220, which was filed on March 17, 2020. The '282 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/11109282

26.    The '664 Patent is entitled, "Searching for Control Channels in a Wireless Network." It lawfully issued on July 12, 2022 and stems from U.S. Patent Application No. 16/928,749, which was filed on July 14, 2020. The '664 Patent is publicly-available at the following location:

https://ppubs.uspto.gov/dirsearch-public/print/downloadBasicPdf/11388664

27.    WiLAN has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Wi-LAN may recover damages. Toyota was put on notice of Asserted Patents prior to the filing of this action and through the filing of this action.

28.    The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by

the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

### DEFENDANTS' PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENT

29.    In August 2021, WiLAN sent a letter to Toyota, addressed to Mr. Akio Toyoda (Toyota Motor Corporation's President), Mr. Tetsuo Ogawa (TMNA's President and CEP), and Mr. Larry Hutchinson (Toyota Canada Inc's President and CEO), inviting Toyota to enter into licensing discussions. WiLAN's letter stated that Toyota vehicles implementing LTE technology infringed patents within WiLAN's LTE portfolio, including the '266 Patent, the '227 Patent, and the '956 Patent.

30.    Toyota received WiLAN's August 2021 letter and subsequently engaged in discussions with WiLAN. In connection with those discussions, WiLAN provided Toyota with claim charts for the patents identified in its August 2021 letter, plus other claim charts.

31.    During the discussions, and rather than acquire a license, Toyota asked WiLAN to engage in discussions with its major TCU suppliers, LG and Continental, among others, to resolve infringement and licensing issues. In response to Toyota's request, WiLAN spoke to LG and Continental. WiLAN concluded a license with LG within ten months.

32.    Continental and Toyota have refused to engage in meaningful licensing discussions with WiLAN. During their discussions, and at the behest of Toyota, WiLAN sent Continental claim charts for the '266 Patent, the '227 Patent, the '956 Patent, the '688 Patent, the '282 Patent, and the '664 Patent, explaining how the implementation and use of Continental TCUs in Toyota vehicles infringe those patents. WiLAN also provided Continental with a claim chart for the European counterpart of the '879 Patent, namely EP3154300.

33.     Nevertheless, Continental still refused to negotiate in good faith with WiLAN, much less take a license, even after WiLAN made Continental a licensing offer based squarely on the commercial terms of WiLAN's license to LG (which also offered Continental broader scope).

34.     On April 1, 2024 WiLAN informed Toyota of Continental's lack of cooperation and refusal to take a license. Toyota replied that it would discuss the matter with Continental, but nothing has been received or communicated from Toyota since. Toyota has simply continued to manufacture and sell Accused Products (e.g., Toyota vehicles with infringing LTE technology).

35.     On information and belief, Toyota has known of the Asserted Patents based on its own interactions with WiLAN, as well as its interactions with Continental, with whom it asked WiLAN to discuss licensing of the WiLAN LTE portfolio.

36.     The Accused Products addressed in the Counts below include, but are not limited to, products identified in WiLAN's letter to Toyota. Toyota's past and continuing sales of the Accused Products (i) willfully infringe the Asserted Patents, and (ii) impermissibly usurp the significant benefits of WiLAN's patented technologies without fair compensation.

## COUNT I
(INFRINGEMENT OF U.S. PATENT NO. 8,259,688)

37.     WiLAN incorporates the preceding paragraphs herein by reference.

38.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

39.     Wi-LAN Inc. is the sole and exclusive owner of all right, title, and interest in the '688 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '688 Patent, including the filing of this patent infringement lawsuit. Indeed, Wi-LAN Inc. owns all substantial rights in the '688 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

40.     The '688 Patent is valid, enforceable, and was duly and legally issued by the USPTO on September 4, 2012, after full and fair examination. As discussed above, during a first reexamination proceeding (No. 90/014,794), the USPTO confirmed that claims 1-3, 5-8, 10, 15, and 16 were patentable, as amended, original claims 4, 9, and 11-14 (which depend from amended independent claims) were patentable, and new claims 17-40 were patentable. The USPTO later confirmed the patentability of claims 1-40 of the '688 Patent in a second reexamination proceeding (No. 90/019,259).

41.     Attached hereto as Exhibit A, and incorporated herein by reference, is a claim mapping detailing how Toyota infringes the '688 Patent.

### *Direct Infringement (35 U.S.C. § 271(a))*

42.     Toyota directly infringes one or more claims of the '688 Patent in this District and elsewhere in Texas and the United States.

43.     To this end, Toyota directly infringes, either by itself or via its agent(s), at least claims 1-3, 6-8, 17-22, 26-34, 36, and 38-40 of the '688 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit A).

### *Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

44.     In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '688 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '688 Patent.

45.     At a minimum, Toyota has known of the '688 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '688 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements.

Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit A) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '688 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '688 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

***Damages***

46.    Wi-LAN Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wi-LAN Inc. in an amount that adequately

compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.     On information and belief, despite having knowledge of the '688 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '688 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '688 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wi-LAN Inc.'s rights with respect to the '688 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 9,271,266)

48.     WiLAN incorporates the preceding paragraphs herein by reference.

49.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

50.     Wireless Future Technologies Inc. is the sole and exclusive owner of all right, title, and interest in the '266 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '266 Patent, including the filing of this patent infringement lawsuit. Indeed, Wireless Future Technologies Inc. owns all substantial rights in the '266 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

51.     The '266 Patent is valid, enforceable, and was duly and legally issued by the USPTO on February 23, 2016, after full and fair examination.

52.     Attached hereto as Exhibit B, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '266 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

53.    Toyota directly infringes one or more claims of the '266 Patent in this District and elsewhere in Texas and the United States.

54.    To this end, Toyota directly infringes, either by itself or via its agent(s), claims 1-12 of the '266 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit B).

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

55.    In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '266 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '266 Patent.

56.    At a minimum, Toyota has known of the '266 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '266 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements. Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit B) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '266 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via

https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '266 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

### *Damages*

57.    Wireless Future Technologies Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wireless Future Technologies Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58.    On information and belief, despite having knowledge of the '266 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '266 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '266 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wireless Future Technologies Inc.'s rights with respect to the '266 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 9,490,879)

59.     WiLAN incorporates the preceding paragraphs herein by reference.

60.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

61.     Wireless Future Technologies Inc. is the sole and exclusive owner of all right, title, and interest in the '879 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '879 Patent, including the filing of this patent infringement lawsuit. Indeed, Wireless Future Technologies Inc. owns all substantial rights in the '879 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

62.     The '879 Patent is valid, enforceable, and was duly and legally issued by the USPTO on November 8, 2016, after full and fair examination.

63.     Attached hereto as Exhibit C, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '879 Patent.

### *Direct Infringement (35 U.S.C. § 271(a))*

64.     Toyota directly infringes one or more claims of the '879 Patent in this District and elsewhere in Texas and the United States.

65.     To this end, Toyota directly infringes, either by itself or via its agent(s), at least claims 1-4 of the '879 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit C).

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

66.    In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '879 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '879 Patent.

67.    At a minimum, Toyota has known of the '879 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '879 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements. Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit C) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '879 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '879 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling

infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

***Damages***

68.     Wireless Future Technologies Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wireless Future Technologies Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

69.     On information and belief, despite having knowledge of the '879 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '879 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '879 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wireless Future Technologies Inc.'s rights with respect to the '879 Patent, justifying enhanced damages under 35 U.S.C. § 284.

### **COUNT IV**
#### (INFRINGEMENT OF U.S. PATENT NO. 9,622,227)

70.     WiLAN incorporates the preceding paragraphs herein by reference.

71.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

72.     Wireless Future Technologies Inc. is the sole and exclusive owner of all right, title, and interest in the '227 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '227 Patent, including the filing of this patent infringement lawsuit. Indeed,

Wireless Future Technologies Inc. owns all substantial rights in the '227 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

73.     The '227 Patent is valid, enforceable, and was duly and legally issued by the USPTO on April 11, 2017, after full and fair examination.

74.     Attached hereto as Exhibit D, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '227 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

75.     Toyota directly infringes one or more claims of the '227 Patent in this District and elsewhere in Texas and the United States.

76.     To this end, Toyota directly infringes, either by itself or via its agent(s), claims 1-9 of the '227 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit D).

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

77.     In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '227 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '227 Patent.

78.     At a minimum, Toyota has known of the '227 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '227 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements. Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit D) as set forth under U.S.C. § 271(b). Such inducements have been committed with the

knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '227 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '227 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

### *Damages*

79.    Wireless Future Technologies Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wireless Future Technologies Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.     On information and belief, despite having knowledge of the '227 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '227 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '227 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wireless Future Technologies Inc.'s rights with respect to the '227 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT V
### (INFRINGEMENT OF U.S. PATENT NO. 10,985,956)

81.     WiLAN incorporates the preceding paragraphs herein by reference.

82.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

83.     Wi-LAN Inc. is the sole and exclusive owner of all right, title, and interest in the '956 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '956 Patent, including the filing of this patent infringement lawsuit. Indeed, Wi-LAN Inc. owns all substantial rights in the '956 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

84.     The '956 Patent is valid, enforceable, and was duly and legally issued by the USPTO on April 20, 2021, after full and fair examination.

85.     Attached hereto as Exhibit E, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '956 Patent.

***Direct Infringement (35 U.S.C. § 271(a))***

86.     Toyota directly infringes one or more claims of the '956 Patent in this District and elsewhere in Texas and the United States.

87.    To this end, Toyota directly infringes, either by itself or via its agent(s), claims 1-22 of the '956 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit E).

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

88.    In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '956 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '956 Patent.

89.    At a minimum, Toyota has known of the '956 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '956 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements. Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit E) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '956 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE

communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '956 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

***Damages***

90.    Wi-LAN Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wi-LAN Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

91.    On information and belief, despite having knowledge of the '956 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '956 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '956 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wi-LAN Inc.'s rights with respect to the '956 Patent, justifying enhanced damages under 35 U.S.C. § 284.

<u>**COUNT VI**</u>
(INFRINGEMENT OF U.S. PATENT NO. 11,109,282)

92.    WiLAN incorporates the preceding paragraphs herein by reference.

93.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq.*

94.     Wireless Future Technologies Inc. is the sole and exclusive owner of all right, title, and interest in the '282 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '282 Patent, including the filing of this patent infringement lawsuit. Indeed, Wireless Future Technologies Inc. owns all substantial rights in the '282 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

95.     The '282 Patent is valid, enforceable, and was duly and legally issued by the USPTO on August 31, 2021, after full and fair examination.

96.     Attached hereto as Exhibit F, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '282 Patent.

### Direct Infringement (35 U.S.C. § 271(a))

97.     Toyota directly infringes one or more claims of the '282 Patent in this District and elsewhere in Texas and the United States.

98.     To this end, Toyota directly infringes, either by itself or via its agent(s), claims 1-20 of the '282 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit F).

### Indirect Infringement (Inducement – 35 U.S.C. § 271(b))

99.     In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '282 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '282 Patent.

100.     At a minimum, Toyota has known of the '282 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '282 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements.

Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit F) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '282 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '282 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

***Damages***

101.    Wireless Future Technologies Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wireless Future Technologies Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot

be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

102.    On information and belief, despite having knowledge of the '282 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '282 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '282 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wireless Future Technologies Inc.'s rights with respect to the '282 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT VII
### (INFRINGEMENT OF U.S. PATENT NO. 11,388,664)

103.    WiLAN incorporates the preceding paragraphs herein by reference.

104.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

105.    Wireless Future Technologies Inc. is the sole and exclusive owner of all right, title, and interest in the '664 Patent and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the '664 Patent, including the filing of this patent infringement lawsuit. Indeed, Wireless Future Technologies Inc. owns all substantial rights in the '664 Patent, including the right to exclude others and to recover damages for all past, present, and future infringements.

106.    The '664 Patent is valid, enforceable, and was duly and legally issued by the USPTO on July 12, 2022, after full and fair examination.

107.    Attached hereto as Exhibit G, and incorporated herein by reference, is a claim mapping that details how Toyota infringes the '664 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

108.    Toyota directly infringes one or more claims of the '664 Patent in this District and elsewhere in Texas and the United States.

109.    To this end, Toyota directly infringes, either by itself or via its agent(s), at least claims 15 and 18 of the '664 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by demonstrating and testing), selling, offering to sell, and/or importing Accused Products (see, e.g., Exhibit G).

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

110.    In addition and/or in the alternative to the direct infringements, Toyota indirectly infringes one or more claims of the '664 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '664 Patent.

111.    At a minimum, Toyota has known of the '664 Patent at least since service of this Complaint. But Toyota also has pre-suit knowledge of the '664 Patent based on pre-suit discussions with WiLAN and Continental, as discussed above, alerting Toyota to its infringements. Since receiving notice of its infringements, Toyota has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated by Exhibit G) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '664 Patent. Indeed, Toyota has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials (e.g., those available at https://www.toyota.com/connected-services/), user manuals (e.g., those available via

https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the Accused Products to implement LTE communications in an infringing manner. By providing such instructions and support, Toyota knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '664 Patent. Additionally, as discussed above, TMC has induced TMNA and TMS to infringe by importing and/or selling infringing products through, among other things, corporate directives and planning which encourage (if not require) TMNA and TMS to import and/or sell Accused Products configured to implement LTE.

***Damages***

112.    Wireless Future Technologies Inc. has been damaged as a result of Toyota's infringing conduct described in this Count. Toyota is, thus, liable to Wireless Future Technologies Inc. in an amount that adequately compensates it for Toyota's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

113.    On information and belief, despite having knowledge of the '664 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '664 Patent, Toyota has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Toyota's infringing activities relative to the '664 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of Wireless Future Technologies Inc.'s rights with respect to the '664 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**CONCLUSION**

114.    WiLAN is entitled to recover from Toyota the damages sustained by WiLAN as a result of Toyota's wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

115.    WiLAN has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and, in such case, WiLAN is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

**JURY DEMAND**

116.    WiLAN hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WiLAN respectfully requests that the Court find in its favor and against Toyota, and that the Court grant WiLAN the following relief:

(i)      Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Toyota;

(ii)     Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Toyota;

(iii)    Judgment that Toyota account for and pay to WiLAN all damages and costs incurred by WiLAN because of Toyota's infringements and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)    Judgment that Toyota account for and pay to WiLAN a reasonable, ongoing, post-judgment royalty because of Toyota's infringements, including continuing infringing activities, and other conduct complained of herein;

(v)    Judgment that WiLAN be granted pre-judgment and post-judgment interest on the damages caused by Toyota's infringements and other conduct complained of herein;

(vi)    Judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)    Such other and further relief as the Court deems just and equitable.

Dated: January 22, 2025                                    Respectfully submitted,


/s/ Edward R. Nelson III
Edward R. Nelson III
State Bar No. 00797142
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Tel: (817) 377-9111
ed@nelbum.com

Ryan P. Griffin
State Bar No. 24053687
Jonathan H. Rastegar
State Bar No. 24064043
David T. DeZern
State Bar No. 24059677
Nelson Bumgardner Conroy PC
2727 N. Harwood St., Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
ryan@nelbum.com
jon@nelbum.com
david@nelbum.com

**Attorneys for Plaintiffs Wi-LAN Inc. and Wireless Future Technologies Inc.**